The next case for oral argument this morning is United States v. Eiland, Appeal No. 24-1528. Good morning. Good morning, Your Honors. May it please the Court. My name is Anna Busse, and I represent the defendant appellant Antwan Eiland in this case. This case at its core is about protecting a defendant's Fifth Amendment right not to testify or put on a defense by ensuring that juries do not improperly consider that decision and by ensuring that the government does not improperly invite juries to do so. This Court should find in favor of Mr. Eiland for three reasons. First, because at least one juror took the government's improper invitation to consider Mr. Eiland's decision not to testify as evidence of his guilt, Mr. Eiland was not afforded an impartial jury in this case. Second, the indirect comments at closing argument that invited the jury to do so violated Mr. Eiland's Fifth Amendment right not to testify. And finally, the evidence presented at trial was not sufficient to convict Mr. Eiland of the charges alleged. First, Mr. Eiland is entitled to a new trial or at a minimum to an evidentiary hearing. This is necessary to ensure that Mr. Eiland had an impartial jury at trial. Defendants are entitled to an impartial jury that determines guilt based on the evidence presented at trial and based on the court's instructions. And Mr. Eiland was afforded neither here. Spessy, we addressed a similar situation in Torres-Chavez, and we're very clear under 606B about what you cannot inquire into in terms of jurors' communications during their deliberations. Do you need, in order to avoid Torres-Chavez, do you need this extraneous prejudicial information or outside influence? So in other words, if we don't agree with you about outside influence or extraneous prejudicial information, do you agree that this case is governed by Torres-Chavez on that issue? Yes, Your Honor, I do. In Torres-Chavez, there was no evidence or allegation of an outside influence at issue here. And as Your Honor knows, in that case, it was determined that the court could not inquire into the jury's verdict. That was an internal juror process that under 606B-2 is not allowed. But we have a different factual scenario here. And your argument here is that the comment the prosecutor made during closings is what is the outside influence. Is that correct? Yes, Your Honor. We would argue that the prosecutor's improper comment during closing argument, because it's not evidence and because it was improper, is an outside influence that should not have been considered by the jury. So if we find that comment was proper or not erroneous, then your juror argument fails as well. The court need not find that the comment rises to the level of plain error to agree with us. So that argument on the Fifth Amendment violation is at plain error because it was not objected to at trial. But the court does not need to find that it rises to that plain error standard to find that it still constituted an external influence. If we find it's proper, would you agree that you're governed then by Torres-Chavez? Yes, Your Honor. If the comment is determined proper in the sense that there was nothing wrong with the government saying there's no answer here for all the evidence we put on at all and the defendant did nothing here, then I think the case is governed by Torres-Chavez because there is no way to get past that 606B bar in that case. What's your limiting principle on that? It seems like based on your argument, any comments that are made during trial could constitute this outside influence, which would really swallow up Rule 606B and how we've interpreted it. Yes, Your Honor. So the limiting principle here is that the 606B2 inquiry should turn on whether the prejudicial information or influence came from outside the trial evidence and outside the jurors internal deliberations. So if you have an instance where something is part of the presentation of evidence and something goes wrong, as Your Honors know, there are ways to address that. So any closing arguments? Any improper closing argument after the close of evidence that presents an issue like here where there's an invitation to consider the decision. What about opening statements? Opening the beginning of evidence. If there's an improper comment there, they're not considered evidence under this Court's jurisprudence. What about a comment made during the course of the trial where the prosecutor is trying to get certain evidence admitted and makes an improper statement there? That's a closer question given the line that we're drawing, but the Court need not reach that distinction here because here we're worried only about an improper comment at closing argument. And that improper comment we know impacted the jury because we have a juror statement from after trial that said that the juror considered Mr. Island's decision not to testify as evidence of his guilt. He thought he wouldn't have testified if he wasn't afraid of being found out as the person in the videos. So here where we have that comment from the juror, we know the juror took this improper step, and we combine that with the prosecutor's remarks during closing argument. We have a stronger case here that allows the Court to draw a more narrow line that would still ensure that Mr. Island's Fifth Amendment rights are protected without, I think, falling into the snowball issue that Your Honor mentioned. And indirect comments on failure to testify made during closing arguments are best understood as internal influences for a couple of other reasons. So if we look at this Court's jurisprudence on internal influences, those things are things like whether a jury is drinking during trial, or they didn't understand instructions, or the kind of case at issue made the jury feel afraid. And the prosecutor's closing arguments don't fit well into that bucket. Instead, they fit better into the external influence bucket with cases like Vasquez-Ruiz, where a juror found the word guilty written in her notebook, or in cases like Wisehart v. Davis, where the jury found out as they were preparing to begin trial that the defendant had taken a polygraph test. Those kinds of things are external influences, and the prosecutor's closing argument here fits better into that bucket. And the prosecutor's comment was improper under this Court's jurisprudence. The prosecutor's comments were an impermissible, indirect comment on Mr. Island's decision not to testify, because they... And you do agree we're reviewing that for plain error, correct? Yes, Your Honor. We're reviewing that for plain error. And those comments were improper because they fall in the same bucket as this Court's jurisprudence that has found comments that evidence was uncontradicted, unrebutted, or here, functionally unanswered, are not proper. This test comes from a case called Cottenham. Indirect comments on a defendant's failure to testify violate the defendant's rights when they were manifestly intended to refer to the defendant's silence, or when they are of such a character that the jury would naturally and necessarily take them to be so. Why weren't those comments invited under our case law, given the defense lawyer's comments during its closing about the missing evidence? You spent quite a bit of time about what isn't there, and that we have said a proper rebuttal is, well, let's focus on what is there. That's true, and in cases like Gustafson, where the Court commented on a particular piece of evidence, no one got up and told you where the came from except our witness that said it came from this place, that's the case. But here, where a government arguer gets up and says the defendant had no answer for anything at all that we put on, those kinds of comments are of a different character, and they put the onus on the defendant to testify and to bring that evidence forward. In other words, could the government have made the same point without the conjunctive? In other words, let's focus on what we did supply without adding the second part. Defendant hasn't supplied any answers. I think that would be proper under this Court's jurisprudence if the government said, here's exactly what we did. We had A, B, and C that supported our case, but that's not what happened here. Here, the government said Mr. Island had no answer for anything that we put on. And I take your concern that that's often a subject of rebuttal, but not- Counsel, I'm actually looking at the transcript at 651. And what the government said was, quote, so you focus on what's the, focus on the evidence that's before you. Right? They didn't enumerate it, but they did say focus on what's before you. And he goes on, or she, and I get why Mr. Boyle focused on what there wasn't, is because they don't have an answer for what there was. So that's not enough to be a rebuttal, right? It's very close. It's like two lines above. Yes. I think without that second part that they don't have an answer for what there was, then there might not be a concern here. But that language very strongly puts the responsibility on the defendant to have had an answer. And the Fifth Amendment protection against self-incrimination that we hold very dear in our criminal justice system means that that's not the case. So I agree, right? Right above there, there's some language that is proper. But the fact that there's proper language doesn't negate the fact that there's also improper language here. Okay. So how, but on the page before, the government references Mr. Boyle's talk, there's no cell phone, there's no recorded funds. So they are talking about, it is a rebuttal to what Mr. Boyle was saying, right? Those comments are, yes. And that comes right before they don't have an answer for what there was. So I'm just trying to figure out where to draw the line, because this is very close in time, perhaps 30 seconds, if not shorter. Yes, Your Honor. I see that the timing there is distinct, but the comment itself, the timing doesn't change the character of the comment. And the character of the comment here differs from other cases where the government is commenting on particular pieces of evidence at issue. Instead, this comment is broad and sweeping. There's no answer at all for anything that we put forward. But the timing does change the character of the comment when you look at it all in context, which is what we're supposed to do. I disagree, Your Honor. I don't think it changes the character of the comment. But our case law is clear that you look at it in the context of the closing and what you've said around it. And so I think it does change the character. Maybe not in all cases, but I think it does change the character. Perhaps in some cases it would here. I would agree to disagree with you on that. To put the onus on the defendant to come forward and have some kind of answer implicates the defendant's Fifth Amendment right. And it matches the court's prior decisions here that find saying evidence was unanswered, uncontradicted, or unrebutted is not proper. And I see that I'm in my rebuttal time, so if there are no further questions. Okay. Thank you. Thank you. Thank you. Mr. Kaloury. Good morning, Your Honor. May it please the court. Prashant Kaloury on behalf of the United States. The judgment against the defendant, Antoine Island, should be affirmed. First, the evidence at trial was more than sufficient for the jury to find that the defendant was the individual who twice sold crack cocaine to a government cooperator. Among other things, the jury heard from multiple witnesses who identified the defendant as the crack dealer. That witness testimony was corroborated by footage of the deals. There were also screenshots taken from that footage that the jury was able to compare to defendant's driver's license photograph, as well as their observations of him at trial. And there was also recorded telephone calls and text messages that the jury would show. Now, the defendant claims that that evidence was insufficient and attacks part of each witness's testimony, as well as the clarity of the footage. He made those same arguments at trial. The jury rejected them. This court should do the same. Questions of witness credibility are reserved for juries, unless one of two exceptions applies, neither of which is present here, that the testimony was physically impossible or that it was impossible by the law. Can we skip to the rebuttal close? Yes, Your Honor. Um, and what we were just discussing with Ms. Bussey, um, when the prosecutor says, um, the defense focused on what was not in evidence because they don't have answers for what was, um, do you think it's possible for a juror to believe based on those statements that Island should have answered or challenged the government's evidence? No, Your Honor. I think the context of the rebuttal argument, um, is very important here first. And I know a pal, uh, attempts to attack this, but at the beginning of the rebuttal closing argument, the government notes very clearly while it refers to the district court's enduring jury selection, that both sides started zero and there is no headstart. Immediately after that, government counsel notes that it is the government that has the burden of proof. You know, let's go back to that too, because I agree with you. The government notes a couple of times that the government has the burden of proof. As for this zero thing, it looks to me like the court, when it makes that statement a couple of days earlier, before voir dire even begins, it's making a different point about zero than the government does a few days later in its rebuttal close at the end of the, um, at the end of trial. So when you look at the voir dire transcript, and I'm searching for it right now, the district court is telling the jurors, don't look at news coverage, put away your phones, um, uh, you know, the only thing that matters is what's happening in this courtroom. Um, this case starts at zero with you. Okay? That seems to me to be a different point than what, um, the rebuttal close, the statement in the rebuttal close, both sides start at zero. Can you comment on that? Here we go. She says, okay, I found my notes. Thank you. Uh, she's saying, you know, don't have your phones. Don't look up anything about this case or participants. This is the only way they can get a fair trial. Understanding all of that and understanding that this case should be at a zero point with you. No one should have a headstart. I'm going to ask you to be sworn. Then we get to rebuttal close and you know exactly what the statement was. Yes, Your Honor. I think it's referring to that. And the reason I say that is because what the point that was trying to be made during rebuttal closing is that the jury was coming in kind of with a blank slate, not knowing anything about the case. And I think even if that, even if the court, if this court were to find that that statement was an artful, I think it gets fixed right after that because the immediate statement after that is the government has the burden of proof. And then government counsel goes through the various parts of the evidence showing that the government has met its burden of proof. And then we get to the remarks that are now being challenged on appeal, which is addressing defense counsel's arguments. So after addressing the, uh, evidence that was before the jury, including the multiple witnesses, footage, et cetera, we then get to missing evidence and government counsel there notes that of course, uh, defense counsel is going to focus on missing evidence because they don't have an answer. They, again, defense counsel doesn't have an answer for what the evidence before the jury was. And so they're going to focus on cell phone contents or the lack of the buy money or the fact that there was no cell phone location information. And government counsel was noting that even if some of those things were there, defense counsel was going to focus on, you know, would find some other missing evidence. In McKenzie, um, we sent back language where the prosecutor talked about uncontroverted, unchallenged, unrebutted. Can you explain to me the I think the daylight or the gap there, your Honor, is that the government was not saying that the defense or defense counsel didn't have an answer to the evidence that was presented before the jury. It was that they, that defense counsel here was focused on missing evidence because they didn't want to address the, uh, address the information that was being put before the jury. I think this court has repeatedly held that remarks in response to a defense counsel argument or a criticism of defense's tactics, which is what I would argue is probably most on point here is it was a criticism of how defense counsel was approaching this by focusing on missing evidence instead of the evidence before the jury, that that is not improper in that that is allowed as rebuttal. And at the very least is not plain error when a defense counsel doesn't object during closing argument. And then your Honor, I would note that even if this court were to find a case here, this was one sentence over a multi-day trial that did not draw any objection from defense counsel, and it was cured by jury instructions about the burden of proof, about defendant's right not to testify, and for that to not even be considered, and that the attorney's statements are not evidence. And of course, there's also the overwhelming evidence here, as I've previously summarized, which brings us to the third point, which is the juror comment. Uh, the district court correctly held that the juror comment that a new trial or evidentiary hearing was not required based on the juror's post-verdict comments. Those comments were inadmissible under Rule 606 and did not warrant further inquiry because they reflected the juror's internal thoughts only. Importantly, there was no reference here to any kind of outside influence from the juror's remarks. The juror also, and I think there's a leap here that the defense takes on appeal, which is the jurors from the remarks didn't say that he actually held anything against the defendant. The juror made a remark afterwards inquiring on whether he might not have testified because he didn't want to hear the voice being matched from testimony to the recordings, or if he didn't, and this trial took place during COVID, if he didn't take down his mask because he didn't want the jury to have a clear view of his face over a multi-day trial as they were watching the footage and the screenshots of defendant through other witnesses. Do you recall how many people were masked in the courtroom? Was defendant an outlier in having a mask on? I don't think this is in the record, Your Honor, and I can only answer based on my memory because I was the trial counsel. I believe defendant was the only individual that was masked. There might have actually, you know what, there might have been one juror who was masked because she was pregnant. Okay. What year was the trial? Was it 22 or 23? I believe it's 2021, or it's possible it was December 22, Your Honor. I can't, it's one of the two. 2022, 2022. Let me ask you this. You know, we were discussing with Ms. Bussey-Island's position that the prosecutor's comments were an external influence, and therefore would be within an exception for 606. I don't see your cases ruling that possibility out definitively. What case can you point to, because the cases you've given us don't do that, say that, you know, that cannot be? Yes, Your Honor. I think the case law on this is pretty sparse. I don't think that this, what happens within a trial proceeding is what the rule had in mind, and I say that for two reasons. First, in terms of what I believe to be the best case, I think it's the Stewart case, which is a Second Circuit case, which describes outside influence as, quote, outside contact, outside communication or publicity, or information that's entered into the jury room through some prohibited route. I don't think closing arguments, and again, I know Your Honor asked some questions about, you know, whether a poorly worded question or an opening statement. I think in those scenarios, you have judicial protection of the defendant's right. So I don't think that's what the rule implies. The rule implies scenarios where the judge isn't there to police what's going on. In this particular instance, if there was something, you know, this couldn't be considered an outside influence because the judge was present, and so the judge could either rule on an objection if an objection had been made, Suosponte inserted herself into the proceeding, and if something, you know, proposed a curative instruction, or if something happened that was so outlandish, could have declared a mistrial. But again, the judge is there to police things in a scenario like closing argument, opening statements, questions that a lawyer might pose during a direct or a cross exam. That's not what Rule 606 is focused on. Rule 606 is focused on information that gets to the jurors in a way that is not in the presence of the judge. You said the best case is Second Circuit and Stewart, but it sounded like you were also about to tell us about another case that you thought could shed better light on your position. I think Stewart is the best case, Your Honor. I would only say that the other cases are instructive in the sense that all the other cases, that I think, frankly, both sides cited, showed there was nothing where an external influence was held to be anything that happened during trial. It was bailiff notes. It was finding out outside of trial about a polygraph examination of a defendant that was never referenced during the trial. It was the guilty note that was scribbled on a juror's notepad. It was a newspaper article about the defendant that was put into a juror room. Again, all of these situations are happening outside of trial. You've argued that the defendant forfeited this argument. In reply, Mr. Island cited Otradovic. How do you respond to that since you didn't get a chance to respond to that? Yes, Your Honor. I think Otradovic is distinguishable here. Otradovic was a situation where there was a slight nuance between what was stated in the lower court and what was stated on appeal. The issue there was whether the defendant had the ability to pay a special assessment. I believe it was a child pornography case. At the lower level, the defense position was the defendant shouldn't be subject to a special assessment because he spent all his money on an attorney. I believe on appeal, it was a slightly nuanced argument, which was he was eligible for appointed counsel. I think in a nuance like that, it's fine. I think in this particular instance, the defendant is asking this court to consider an external influence, a purported external influence, the closing argument. That was never raised to the district court before. Importantly here, the juror comment was disclosed to the defense counsel. They filed a motion for a new trial based solely on the comment. The government responded saying this is purely internal. There is no external influence being alleged. Then on reply and at the hearing, defense counsel at the district court level said, well, the only thing they identified was the comment on its own evidence racial bias. The district court put a kibosh to that. There was nothing about closing argument. For defendant to now raise that for the first time on appeal does a disservice to the lower court proceedings because the district court can never consider it. That's why we believe the argument is forfeited if not waived in that scenario. I would simply note, Your Honor, that at the end, that even if the juror remark could be considered as an outside influence, on its own, it's still not enough because the juror did not connect anything that he considered to the government's closing argument. There needs to be some connection there. But if it was an outside influence, shouldn't a hearing have been conducted? If it was an outside influence, yes, it should. And if the juror had said, because of what the government said, I started considering this, that could be a problem. That, I think, would lead to a scenario where further inquiry was needed. But that's not present here. And so we'd ask that the judgment against the defendant be affirmed. Thank you, Your Honor. Thank you. Ms. Bussey. I'd like to start with the government's argument that the evidence was overwhelming here. And I think that's a mischaracterization, to say the best. The evidence presented at trial to identify Mr. Island as the individual known as black was not overwhelming. So even on a plain error standard where we are on that Fifth Amendment issue or at harmless error, these evidentiary issues are significant enough to indicate that these errors require reversal. So, for example, the videos referenced by the government don't show this individual's face for more than a second in one of them. It's only in profile. And in the other, the top half of the individual's face is obscured. Special Agent Ramos, when identifying black as Mr. Island, attempted to do so having never met Mr. Island, never met black. His only familiarity with Mr. Island was through a driver's license photo. What about the confidential informant's in-court identity? The confidential informant, as we know, has ulterior motives and biases at issue. But beyond that, which would... Wouldn't that require us to reweigh the evidence? If the confidential informant himself during the trial said, Mr. Island, that's the one, for us to overturn that would be really stepping outside of our precedent. It would be putting us in the place of reweighing and finding that CI not credible. On the sufficiency of the evidence issue, perhaps. But when we turn back to the idea of the errors being harmless or not plain, that kind of issue is something that the court can take their authority to look at the whole picture. And here, Mr. Villegas, the confidential informant, claimed to have met the individual black on a timeline that was impossible, provided a very short description that was only height, gender, race, and the fact that he was wearing diamond earrings. And from there, we have a lack of credible evidence to connect the phone number at issue to Mr. Island. The contemporaneous report was not preserved nor presented at trial. And a report run five years later produced only an 86% chance this number belonged to Mr. Island. And then you have Ms. Robinson, the final person to identify, allegedly, supposedly, Mr. Island at trial. But when she was initially interviewed, she named two other individuals first. Then she said she couldn't identify the person in the video and only when shown a subpoena with Mr. Island's name on it did she say, yes, that's him. And these kinds of holes in the evidence are enough to indicate that the errors complained of here are not harmless. There's a chance that these things took Mr. Island's Fifth Amendment right away. And I think, to the point made earlier, that an evidentiary hearing is the proper way to determine the errors at issue here, whether they happened. That is what we should do here, because although it's true that the juror didn't say to the judge at the time, I considered this because the prosecutor during closing argument said maybe that I could, at an evidentiary hearing where we could ask the jurors how they reacted to that comment, we might be able to determine that that was the case. There's certainly a reasonable probability that that was the case. So here, where we have this evidence that we can ignore that a juror may have considered Mr. Island's exercise of his Fifth Amendment right, an evidentiary hearing, I think, is really proper to make sure that we protect that right. If there are no further questions, we'll ask that you find in favor of Mr. Island. Thank you. Thank you, Ms. Bussey. And, Ms. Bussey, you and your firm have accepted a court appointment for this case. Thank you for doing so, and thank you for your strong advocacy on behalf of your client. Thank you. Thanks to you, Mr. Clorey, as well. The court will take the case under advisement.